[907 NYS2d 627]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v ROBERT
ROBAR, Defendant.

County Court, Sullivan County, September 3, 2010

### APPEARANCES OF COUNSEL

*James R. Farrell, District Attorney*, Monticello (*Bonnie Mitzner* of counsel), for plaintiff. *Ricciani & Jose, LLP*, Monticello (*Jacqueline Ricciani* of counsel), for defendant.

**OPINION OF THE COURT**

FRANK J. LABUDA, J.

The defendant, Robert Robar, was charged, under indictment No. 61-2010, in count one of assault in the second degree (Penal Law § 120.05 [4]) and count two of reckless endangerment in the second degree (Penal Law § 120.20), each of which accuse the defendant of reckless conduct which caused serious injury to Terry Pelton by means of a deadly weapon by shooting him with a Savage model 110E-30-06 hunting rifle in the lower back or buttocks area during a hunting incident.

On the 24th day of November 2009, at approximately 9:00 A.M. at the Ridge Runner Hunting Camp[1] on Rio Dam Road, in the Town of Lumberland, County of Sullivan, State of New York, the defendant[2] was hunting alone on his property because the other members of his hunting party had gone to town to purchase supplies. The defendant alleges that he was in the woods that morning, and he saw a deer moving through some trees. The defendant continued to watch the deer and when it started to move away, he shot at the deer. The object that the defendant believed was a deer was actually a man, Terry Pelton, who was dressed in camouflage clothing, with no blazing orange colors, and was hunting and trespassing on the defendant's private and posted land. As a result of the shooting Mr. Pelton was shot in the buttocks and the groin, suffering serious physical injury.

While there is no law, rule or regulation in New York which requires a hunter to wear the blazing orange colors taught by the New York State Department of Environmental Conservation, it is recognized by all that said colors serve as a safety mechanism to be seen by other hunters easily. In the past, hunters wore the color red, but over time, studies[3] have shown that the blazing orange colors are more easily observed in the woods.

---

**1.** Private woodland property, posted and adjoining marked state hunting lands.

**2.** A hunter properly licensed to take antlered or antlerless deer.

**3.** According to the Pennsylvania Game Commission, the statistics for 2004 show that it set a new safety record. Regardless of this "accomplishment," there were still 56 hunting-related shooting accidents, including four fatalities. The accident rate equated to 5.56 accidental shootings per 100,000 hunters, should they be considered "accidents," "incidents," or just "very bad judgment calls." The second most common cause for shooting incidents was mistake for game, which accounted for 16 incidents, including one fatality. Shooting incidents throughout the United States have similar statistics.

When the defendant realized that he had shot a person and not a deer he immediately ran over to Mr. Pelton, picked him up and brought him straight to a hospital.

This matter was called for jury selection and trial on August 23, 2010.

Jury selection commenced on Monday, August 23, 2010 with an initial venire of 23 potential jurors. During voir dire, defense counsel asked questions pertinent to a class of active licensed hunters. Defense counsel then peremptorily challenged six potential jurors who indicated they were licensed and actively involved with hunting.

There were three rounds of jury selection before a full jury was selected. During the first round of jury selection the defendant used three peremptory challenges and in the second round of jury selection the defense used two peremptory challenges to exclude licensed active hunters after voir dire. The Assistant District Attorney (ADA)[4] then moved the court to find a *Batson* violation (pursuant to *Batson v Kentucky* [476 US 79 (1986)]). The *Batson* Court found that Black people are a cognizable and protected class of persons and a member of said class cannot be denied as a juror based on race alone. The court heard argument, on the record, and reserved decision on the novel issue argued by the People that hunters are a *Batson* class of protected citizens. Thereafter, in the third round of jury selection, a sixth juror (also an active licensed hunter) was struck by the defense. The court again reserved on the decision on the prosecution's novel and unique application under *Batson*.

The State of New York has expanded *Batson* to include discriminatory practices based upon "race, gender or any other status that implicates equal protection concerns." (*People v Luciano*, 10 NY3d 499, 503 [2008].)

This court granted the People's application in voir dire and held a *Batson* hearing where the defense stated its no-hunter discrimination reasons for the challenges prior to the seating of the trial jury. This court found those defense reasons to be pretext. Both the prosecution and the defense argued on the record and the court reserved decision and requested case law

---

4. Senior ADA Bonnie Mitzner has 25 years of experience in the District Attorney's Office and is the main appeals writer for that office.

authority from the ADA and the defense attorney.[5] *Batson* requires a three-part test for the court to find a violation: first, that the persons peremptorily dismissed from the jury panel are a cognizable and protected class of people and were dismissed solely on that basis; second, the accused party must set forth a neutral reason or reasons for each challenged striking of a juror; and third, whether the neutral reason to strike is a mere pretext to the *"Batson* violation." (*See People v Allen*, 86 NY2d 101 [1995].)

This court then stated to the parties that he was going to reserve decision on the *"Batson* violation" and would continue with jury selection. Both parties continued with jury selection and did not request an adjournment or a stay of the trial proceedings.

The jury was selected and testimony commenced. At various times during the direct case of the People, the *Batson* issue was raised and this court commented thereon while continuing to reserve decision thereto.

At the conclusion of the People's direct case, the defense moved for a trial order of dismissal based only on a failure of proof and the People opposed the motion. Neither party addressed the outstanding *Batson* issue that the People raised and for which the court was still waiting for statutory or case law authority before rendering a decision. The defense then called its first witness, the defendant.

On August 26, 2010, after the testimony of the defendant, and prior to ruling on the defense motion for a trial order of dismissal, this court recessed the jury and again heard extensive oral argument on the record wherein the People again strenuously argued their *Batson* challenge and the defense opposed said motion.

The court recessed for the day to continue its own research since both counsel failed to provide the court with its requested legal precedent, and to consider the arguments posited by both parties before rendering its decision the following morning.

The following morning, both parties assembled in open court, without the jury, and since the People still had not withdrawn their *Batson* challenge, the court rendered its decision from the bench with a written decision to follow.

---

**5.** Ms. Jacqueline Ricciani is a private experienced criminal defense attorney who also works part time as a trial defense attorney for the Sullivan County 18-B panel.

Peremptory challenges to dismiss a juror were first recognized in New York in 1828. Today, that right can be found in CPL 270.25 (1), which defines a peremptory challenge as "an objection to a prospective juror for which no reason need be assigned." However, the use of peremptory challenges is not absolute or unfettered. (*See People v Kern*, 75 NY2d 638 [1990].)

Since the United States Supreme Court decided *Batson* in 1986, various courts have expanded the principle of *Batson* to gender and religion. As stated above, New York further expanded *Batson* to include "any other status which implicates equal protection" under the Fourteenth Amendment to the United States Constitution and the corresponding New York Constitution under *Luciano* (10 NY3d at 503). Clearly, after 20 years of *Batson*, the New York State Court of Appeals was open to extending the *Batson* principle far beyond race or gender.

Italian-Americans have been found to be a "cognizable racial group" protected from discriminatory exclusion from a jury in *People v Rambersed* (170 Misc 2d 923, 925 [Sup Ct, Bronx County 1996]).

Based upon *Batson* and its progeny, the current status of law in New York State contains decisions from every level of trial and appellate court finding race, gender and religion to be cognizable and protected classes of persons. (*See People v Quiles*, 74 AD3d 1241 [2d Dept 2010] [Hispanic and Asian races]; *People v Black*, 65 AD3d 1370 [2d Dept 2009] [race]; *People v Hall*, 64 AD3d 665 [2d Dept 2009] [race]; *People v Guardino*, 62 AD3d 544 [1st Dept 2009] [Black women]; *People v Hall*, 53 AD3d 552 [2d Dept 2008] [race]; *People v Fulton*, 24 AD3d 959 [3d Dept 2005] [women]; *People v Skervin*, 13 AD3d 661 [3d Dept 2004] [race]; *People v Colon*, 307 AD2d 378 [3d Dept 2003] [race]; *People v Smocum*, 99 NY2d 418 [2003] [Hispanic and Black races]; *People v James*, 99 NY2d 264 [2002] [race]; *People v McIndoe*, 277 AD2d 252 [2d Dept 2000] [race]; *People v Hinds*, 270 AD2d 891 [4th Dept 2000] [race]; *People v Long*, 269 AD2d 694 [3d Dept 2000] [race]; *People v McCoy*, 266 AD2d 589 [3d Dept 1999] [race]; *People v Payne*, 88 NY2d 172 [1996] [race]; *People v Liang Jun Ying*, 236 AD2d 630 [2d Dept 1997] [Asian race]; *People v Posner*, 226 AD2d 481 [2d Dept 1996] [non-White race]; *People v Langston*, 167 Misc 2d 400 [Sup Ct, Queens County 1996] [Islamic religion]; *People v Garcia*, 217 AD2d 119 [2d Dept 1995] [Black women]; *People v Allen*, 86 NY2d 101 [1995] [gender].)

Research has not found, nor has the court been supplied by either party, any case law where a court has addressed hunters

or any similar class of people to be an issue as a cognizable and protected class under *Batson/Luciano*.

The New York State Court of Appeals has found that discrimination in jury selection that "implicates" equal protection is barred (*Luciano*, 10 NY3d at 503); however, discrimination in jury selection is also barred by the Civil Rights Clause of the New York Constitution under *People v Kern (supra)*.

The Civil Rights Clause of the New York Constitution (article I, § 11) protects a person's civil rights, which are defined as "those rights which appertain to a person by virtue of his citizenship in a state or a community." (*People v Kern*, 75 NY2d at 651.)

A litigant's civil rights in New York go to their right to serve as a juror (NY Const, art I, § 11) and a litigant's right to a jury of one's peers: "No member of this state shall be disenfranchised, or deprived of any of the rights and privileges secured to any citizen thereof, unless by law of the land, *or the judgment of his or her peers*" (NY Const, art I, § 1 [emphasis added]).

"Racial discrimination in the selection of juries harms the excluded juror by denying this opportunity to participate in the administration of justice, and it harms society by impairing the integrity of the criminal trial process." (*People v Kern*, 75 NY2d at 652.)

Clearly, the expansion of *Batson*-like challenges harms active licensed hunters' civil rights to be a juror and not be excluded simply because of their classification and harms the jury process by not having a cross section of the community represent a jury of the defendant's peers.

In 1975 the United States Supreme Court reiterated a basic American jury trial right that a jury in a criminal case must be drawn from a venire that is composed of members from a cross section of the community so as to protect a defendant's equal protection rights. (*See Taylor v Louisiana*, 419 US 522 [1975].) The District Attorney maintains that the People are also entitled to a fair trial and have a right to a fair cross section of this community.

This court finds that licensed hunters are a recognized class of persons entitled to all rights afforded by the Civil Rights Clause of the New York Constitution. The State regulates and licenses this class and this class specifically requires US Constitution Second Amendment protection.

This court is not yet ready to find at this time that licensed hunters are a cognizable and protected class distinct under

*Batson/Luciano*, but this court does finds that they are a class governed by the Civil Rights Clause, which guarantees the right to sit on a jury and for a defendant to be tried by a jury of his peers. Therefore, exclusion of all licensed hunters in the instant matter is a *Batson*-like violation against a fair trial.[6]

This court also finds that the motion by the People to find a *Batson* violation was not withdrawn and that there is no cure to said violation short of a new trial with a different jury pool.

Based upon the above, it is ordered that the motion of the People for a *Batson* violation is granted, but modified in part, to the extent that a *Batson*-like violation is found herein, and it is further ordered that there being no cure for said violation in this trial, a mistrial is herein and hereby declared, and it is further ordered that the Sullivan County Supreme and County Court Clerk shall schedule the above for trial forthwith.

---

**6.** By analogy, if a case involved a charge of reckless driving on a highway, a litigant's peremptory challenge to all licensed active highway drivers would be suspect.