[921 NYS2d 710]

In the Matter of ROBERT ROBAR, Petitioner, v FRANK J. LABUDA, as Judge of the County Court of Sullivan County, et al., Respondents.

Third Department, April 28, 2011

APPEARANCES OF COUNSEL

*Ricciani & Jose, L.L.P.,* Monticello (*Jacqueline Ricciani* of counsel), for petitioner.

*James R. Farrell, District Attorney,* Monticello (*Bonnie M. Mitzner* of counsel), for James R. Farrell, respondent.

## OPINION OF THE COURT

Spain, J.

On the morning of November 24, 2009, petitioner was reportedly hunting alone on his property in the Town of Lumberland, Sullivan County when he mistakenly shot another hunter who had come onto the land, causing serious physical injuries. As a result, petitioner was charged by Sullivan County indictment No. 61-2010 with the crimes of assault in the second degree and reckless endangerment in the second degree. The trial ultimately resulted in a declaration of a mistrial over petitioner's objection, requiring resolution in this related special proceeding of whether a retrial on these charges is barred under principles of double jeopardy. We hold that it is so precluded.

During early rounds of jury selection in County Court, Sullivan County on August 23, 2010, the Assistant District Attorney appearing on behalf of the People objected to petitioner's use of peremptory challenges to eliminate five hunters from the jury panel, claiming it violated *Batson v Kentucky* (476 US 79 [1986]) and its progeny. Petitioner argued that *Batson* was inapplicable but, at the court's direction, provided reasons for striking these jurors, reasons which were unrelated to the jurors' hunting experiences. County Court allowed petitioner's peremptory challenges and excused the disputed potential jurors, but then indicated that it had reserved its decision on the purported *Batson* challenge, and thereafter swore in the 10 remaining jurors who had not been challenged. After another round of jury selection, the People renewed their *Batson* objection based upon the defense's use of a peremptory challenge against a sixth potential juror with a hunting background; the court excused the juror

but continued to reserve decision. After the complete jury was selected and sworn, additional *Batson* arguments were heard, but the court continued to reserve decision. The People presented their case-in-chief and then rested. During petitioner's testimony in his defense, County Court excused the jury for the day and sua sponte announced that it was considering whether to grant a mistrial on an unrelated evidentiary issue. The following morning, August 25, 2010, County Court again heard arguments on the *Batson* motion and the People agreed that a mistrial was necessary, and the court again reserved decision. However, later that day, the People faxed a letter to the court unequivocally asserting that they were not seeking a mistrial. Petitioner also faxed a letter opposing a mistrial.[1]

The next day, August 26, 2010, relying on *People v Luciano* (10 NY3d 499 [2008]), County Court ruled from the bench that petitioner had violated *Batson* and its progeny by systematically excluding hunters from the jury, which it ruled are a class of people entitled to equal protection. The court also premised its ruling on hunters' rights to sit on a jury and on the right of criminal defendants to a jury of one's peers. Over petitioner's unequivocal opposition, and without conferring with the People regarding their position or referring to their letter indicating that they were not seeking a mistrial, the court ruled that a mistrial was necessary and ordered an immediate retrial. The court faulted the parties for proceeding to trial without requesting an adjournment or "demand[ing] a decision with respect to the *Batson* issue."

County Court subsequently issued a written decision purportedly granting the People's *Batson* objection to the extent of ruling that a "*Batson*-like" violation had occurred. Finding no other "cure" for that violation, the court declared a mistrial (*People v Robar*, 29 Misc 3d 693 [2010]). While apparently recognizing that "licensed hunters are [not] a cognizable and protected class distinct under *Batson/Luciano*" (*id.* at 698-699), the court alternately premised its written finding of the necessity for a mistrial on the excluded jurors' civil rights as hunters to serve as jurors (*see* NY Const, art I, §§ 1, 11), as well as on a criminal defendant's right to a jury of his or her peers (*see* NY

---

1. The Assistant District Attorney who tried the case submitted an affidavit in support of the answer filed in this CPLR article 78 proceeding by respondent Sullivan County District Attorney affirming that the People had submitted a letter to County Court advising that they did not want a mistrial, and a copy of that letter is annexed to the answer as an exhibit.

Const, art I, § 1) and to a jury comprised of a cross section of the community. Under the court's novel rationale, licensed hunters are a class entitled to constitutional civil rights protection because they are protected by and exercising the right to bear arms as conferred by the US Constitution Second Amendment.

Petitioner commenced this CPLR article 78 proceeding in this Court against respondent County Judge of Sullivan County (hereinafter respondent) and respondent Sullivan County District Attorney seeking, among other things, a writ of prohibition precluding a retrial on the criminal charges on double jeopardy grounds (see CPLR 506 [b] [1]; CPL 40.20). This Court granted petitioner's motion for a stay of the retrial pending this special proceeding and, upon our review of the well established governing law and the record, we find that the petition should be granted.

Relief in the nature of prohibition is available to bar a criminal retrial that would violate double jeopardy (see Matter of Enright v Siedlecki, 59 NY2d 195, 198 n 1 [1983]; Hall v Potoker, 49 NY2d 501, 505 n 1 [1980]; Matter of Pronti v Allen, 13 AD3d 1034, 1036 [2004]; Matter of Lamondie v Main, 152 AD2d 902, 903 n [1989]). Moreover, because "double jeopardy implicates the very power of the [s]tate to prosecute a particular defendant for a particular crime," a defense against prosecution premised upon constitutional double jeopardy principles poses a question of law for our review even if not adequately preserved at trial (People v Michael, 48 NY2d 1, 7 [1979]).

"The Double Jeopardy Clauses of the State and Federal Constitutions provide that the state may not prosecute a defendant twice for the same offense (see NY Const, art I, § 6; US Const 5th Amend)" (Matter of Rivera v Firetog, 11 NY3d 501, 506 [2008], cert denied 556 US —, 129 S Ct 2012 [2009]). Jeopardy attaches "when a jury is impaneled and sworn (see CPL 40.30 [1] [b])" (id.) and encompasses "the defendant's right to be free from reprosecution if the first trial has not continued to conclusion" (People v Baptiste, 72 NY2d 356, 359 [1988]). "As a general principle, the People are entitled to only one opportunity to compel a defendant to stand trial" (Matter of Rivera v Firetog, 11 NY3d at 506) because a "defendant possesses a 'valued right' to have his [or her] trial completed by a particular tribunal on the first presentation of the evidence" (People v Baptiste, 72 NY2d at 359-360; see Illinois v Somerville, 410 US 458, 466 [1973]; People v Catten, 69 NY2d 547, 557 [1987]).

Under the seminal United States Supreme Court decision in United States v Perez (9 Wheat [22 US] 579 [1824]), where a court declares

a mistrial without the consent or over the objections of a defendant, the constitutional prohibition against double jeopardy will preclude a retrial for the same offenses unless "there is a manifest necessity for [the mistrial], or the ends of public justice would otherwise be defeated" (*id.* at 580; *see Matter of Enright v Siedlecki*, 59 NY2d at 199-200). By contrast, where a mistrial is granted on a defendant's motion, the defendant is deemed to have elected to terminate the proceedings and the "manifest necessity" standard is inapplicable to the double jeopardy analysis, unless under a narrow exception the prosecutor's or court's improper actions giving rise to the defendant's mistrial motion were done "in order to goad the [defendant] into requesting a mistrial" (*United States v Dinitz*, 424 US 600, 611 [1976]). In that latter case, the defendant may raise the bar of double jeopardy to a second trial after successfully moving for a mistrial at the first· trial (*see Oregon v Kennedy*, 456 US 667, 673, 676 [1982]; *United States v Tateo*, 377 US 463, 468 n 3 [1964]; *Matter of Gorghan v DeAngelis*, 7 NY3d 470, 473-474 [2006]). These governing principles are reflected in CPL 280.10, which requires a declaration of a mistrial on a defendant's motion for errors or conduct that deprives a defendant of a fair trial (*see* CPL 280.10 [1]), upon the People's motion, where there has been "gross misconduct by the defendant or some person acting on [the defendant's] behalf" (CPL 280.10 [2]), or upon either party's motion or sua sponte, "when it is *physically impossible* to proceed with the trial in conformity with law" (CPL 280.10 [3] [emphasis added]; *see Matter of Enright v Siedlecki*, 59 NY2d at 199-200).

[1] First, we emphasize that petitioner's defense counsel at all times promptly and unmistakably refuted the objections to her exercise of peremptory challenges and opposed a mistrial. We outright reject County Court's oral ruling that petitioner had somehow "consented to a mistrial" by not asking for an adjournment of jury selection.[2] The People never asked for any specific relief during jury selection, when numerous remedies were still available to the court in the event it found a jury selection violation. Indeed, it was County Court that (1) allowed petitioner's disputed peremptory challenges and excused the challenged jurors, but (2) repeatedly reserved on the People's

---

2. Likewise incorrect is respondent's conclusion that counsel's failure to take other actions *after* the jury was sworn to compel a ruling on the People's jury selection objection constituted a waiver of double jeopardy defenses or consent to a mistrial, as jeopardy had already attached.

objections and (3) swore in the jury, causing jeopardy to attach. Thus, under no interpretation can it be concluded that petitioner consented to a mistrial or waived double jeopardy claims (*see People v Michael*, 48 NY2d at 6-7; at 5 n 1). Likewise, the People made clear that while they desired a ruling on their *Batson* objection, they were not seeking a mistrial. Thus, the People effectively withdrew any consent to a mistrial.

As County Court's declaration of a mistrial occurred sua sponte,[3] over petitioner's objection, a retrial is precluded in the absence of a "manifest necessity" (*United States v Perez*, 9 Wheat [22 US] at 580). While a trial court is entrusted with discretion in its decision whether a mistrial is necessary, "[t]he reasons underlying the grant of a mistrial may not be illusory; rather, in order fully to protect the defendant's right to trial by a particular tribunal they must be necessitous, actual and substantial" (*Matter of Enright v Siedlecki*, 59 NY2d at 200). Indeed, trial courts have been warned to proceed "with the greatest [of] caution" (*United States v Perez*, 9 Wheat [22 US] at 580) because, for double jeopardy purposes, only a "high degree" of necessity will justify a mistrial over a defendant's objections (*Arizona v Washington*, 434 US 497, 506 [1978]). If a court grants a mistrial against a defendant's wishes without considering the alternatives "or otherwise acts irrationally or irresponsibly . . . or [out of an] abuse of discretion, retrial will be barred" (*Matter of Enright v Siedlecki*, 59 NY2d at 200 [citations omitted]). We find such an abuse of discretion here (*see People v Catten*, 69 NY2d at 558; *People v Michael*, 48 NY2d at 9-11; *People v Mergenthaler*, 13 AD3d 984, 985-986 [2004]; *Matter of Pronti v Allen*, 13 AD3d at 1036; *Matter of Lamondie v Main*, 152 AD2d at 903).

To the extent that County Court granted the mistrial premised on *Batson* principles, we emphasize that it failed to follow the long-established three-step process set forth in that case and its progeny, as required to assess a claim of discriminatory jury selection practices (*see People v Hecker*, 15 NY3d 625, 634-635 [2010]; *People v Luciano*, 10 NY3d at 503; *People v Smocum*, 99 NY2d 418, 422 [2003]; *People v Knowles*, 79 AD2d 16, 20 [2010]). To that end, after requiring defense counsel to state her reasons for striking the hunters from the jury, counsel

---

**3.** Even if the mistrial were viewed as made at the People's behest, it was not based upon "gross misconduct" by the defense (*see* CPL 280.10 [2]) and it was made over petitioner's objection and, thus, a showing of "manifest necessity" is required (*see Matter of Enright v Siedlecki*, 59 NY2d at 199-200; *see also* CPL 280.10 [3]).

provided reasons unrelated to their hunting activities for her exercise of peremptory challenges, thereby overcoming any inference of discrimination (*see Purkett v Elem*, 514 US 765, 768-769 [1995]). However, the court never ruled on the dispositive issue of whether defense counsel's stated reasons for striking these disputed potential jurors were a pretext for impermissible discrimination, a credibility determination that is a prerequisite to any *Batson* ruling (*see Snyder v Louisiana*, 552 US 472, 477 [2008]; *People v Knowles*, 79 AD3d at 20-22).

■ On the merits, while *Batson* has been applied to peremptory challenges made by defense counsel, i.e., to reverse-*Batson* challenges (*see Georgia v McCollum*, 505 US 42, 53-54 [1992]; *People v Luciano*, 10 NY3d at 502-503; *People v Kern*, 75 NY2d 638, 653 [1990]), it has only been interpreted to prohibit discrimination "on the basis of race, gender or *any other status that implicates equal protection concerns*" (*People v Luciano*, 10 NY3d at 503 [emphasis added]). We reject County Court's unsupported conclusion that the highlighted language was intended to extend *Batson*'s protections to hunters. There is no authority for the proposition, dubious at best, that they are a cognizable group on par with race, ethnicity (or ethnic origin), gender or other status whose exclusion implicates heightened equal protection concerns and scrutiny (*see Batson v Kentucky*, 476 US at 87-89, 94, 96; *see also United States v Martinez-Salazar*, 528 US 304, 314-315 [2000]; *Hernandez v New York*, 500 US 352, 355 [1991]; *People v James*, 99 NY2d 264, 270 and at 270 n 3 [2002]; *People v Payne*, 88 NY2d 172, 181 [1996]; *People v Allen*, 86 NY2d 101, 108 [1995]; *People v Childress*, 81 NY2d 263, 266-267 [1993]).[4] Unlike racial or ethnic minorities and women, there has been no showing that hunters have faced a history of prejudice, exclusion, invidious discrimination or stereotypes (*see id.*; *see also J. E. B. v Alabama ex rel. T. B.*, 511 US 127, 131 [1994]). While the exclusion of hunters may (or may not) disproportionally affect one gender, it was not unconstitutional here because there was no showing (or finding) of pretext (*see J. E. B. v Alabama ex rel. T. B.*, 511 US at 128-129, 131-136, 143 n 16). The fact that hunters may exercise their Second Amendment right—a right certainly not limited to hunt-

---

4. The United States Supreme Court has not yet ruled on whether religion-based peremptory challenges are unconstitutional under *Batson* (*see Davis v Minnesota*, 511 US 1115, 1116 [1994, Thomas, J., dissenting in denial of certiorari]; *United States v Brown*, 352 F3d 654, 662, 666-670 [2d Cir 2003]; *People v Knowles*, 79 AD3d at 22 and at 22 n 1).

ers or conferred upon them *because* they are hunters—does not morph them into a cognizable group for equal protection purposes (*see* US Const 2d Amend; *see also McDonald v Chicago*, 561 US —, —, 130 S Ct 3020, 3036-3042 [2010]).

The District Attorney has provided no authority in this proceeding for the meritless proposition that a person's status as a hunter is or ever has been subject to equal protection precepts under heightened scrutiny analysis or otherwise (*see J. E. B. v Alabama ex rel. T. B.*, 511 US at 135, 137). Indeed, the District Attorney no longer makes any attempt to justify these baseless *Batson* objections, for reasons that are obvious to this Court, or to support County Court's grant of a mistrial based upon any jury selection violation.[5] As there was no *Batson* violation by defense counsel, granting a mistrial based thereon was a patent error.

Likewise, a mistrial was not manifestly necessary based upon the rights of the discharged jurors. To be sure, "[j]ury service—a privilege and duty of citizenship—is a civil right established by our Constitution (NY Const, art I, §§ 1, 11; Civil Rights Law § 13)" (*People v Allen*, 86 NY2d 101, 108 [1995]; *see People v Hecker*, 15 NY3d at 649; *People v Kern*, 75 NY2d at 651-652). These civil rights of potential jurors and the harm caused by their unconstitutional exclusion provide an alternate rationale for *Batson*'s prohibition against the impermissible discriminatory exercise of peremptory challenges (*see People v Luciano*, 10 NY3d at 505; *People v Kern*, 75 NY2d at 651-653; *see also Powers v Ohio*, 499 US 400, 406-409 [1991]; *Batson v Kentucky*, 476 US at 87-88).

However, no such violation of the jurors' civil and constitutional rights occurred here because they were not excluded

---

5. We are unconvinced by the District Attorney's attempt in this proceeding to avoid double jeopardy by exclusively arguing that respondent's own improper remarks and conduct as trial judge during jury selection and trial created a "manifest necessity" for the declaration of a mistrial. County Court did not, of course, grant a mistrial on this ground. Our review of a trial judge's award of a mistrial focuses on whether, under the circumstances facing that judge, the declaration of a mistrial was an abuse of discretion (*see Matter of Enright v Siedlecki*, 59 NY2d at 200). As the reasons relied upon by the trial judge may not be illusory but must be actual and necessary (*see id.*), it is not the role of a reviewing court to "search the record" to decipher an alternative ground that we are convinced *would have* supported a mistrial (but which played no role in the trial judge's actual mistrial ruling). Of course, judicial or prosecutorial impropriety that intentionally goads a defendant into moving for a mistrial (*see Oregon v Kennedy*, 456 US at 672-674) may trigger double jeopardy and bar a retrial. Here, petitioner chose not to move for a mistrial.

"because of race, color, creed or religion" (NY Const, art I, § 11) or "national origin or sex" (Civil Rights Law § 13; *see* NY Const, art I, § 1). Further, contrary to County Court's ruling, petitioner's exercise of peremptory challenges can in no way be said to have deprived him of his right to a jury of his peers (*People v Robar*, 29 Misc 3d at 698-699), as there is no requirement that the "jur[y] actually chosen must mirror the community and reflect the various distinctive groups in the population" (*Taylor v Louisiana*, 419 US 522, 538 [1975] [6th Amendment right to an impartial jury includes right to a jury drawn from a fair cross section of the community, which is violated by the exclusion of women from jury service]).

 Moreover, even if a *Batson* violation by defense counsel had occurred, declaring a mistrial over petitioner's objection was improper. *Batson* itself left it to the states to decide how best to implement its holding, including the selection of remedies that may include discharge of the venire and selection of an entirely new jury or disallowing the improper peremptory challenges and reinstating the challenged jurors (*see Batson v Kentucky*, 476 US at 99 n 24; *United States v Walker*, 490 F3d 1282, 1294-1295 [11th Cir 2007], *cert denied* 552 US 1257 [2008]). Other remedies include granting the nonoffending party additional peremptory challenges or forfeiture of the peremptory challenges used in a discriminatory manner (*see People v Luciano*, 44 AD3d 123, 125-126 [2007], *affd* 10 NY3d 499 [2008]). Here, however, the undue delay in ruling on the unfounded but timely[6] *Batson* objections foreclosed any viable remedy. *Batson* contemplated that any objection would be raised and promptly ruled upon during jury selection, as the possible remedies upon a finding of a violation all cease to exist once the jury is sworn (*see Batson v Kentucky*, 476 US at 83, 99 n 24; *see also Hernandez v New York*, 500 US 352, 358-359 [1991, Kennedy, J.]; *McCrory v Henderson*, 82 F3d 1243, 1247 [2d Cir 1996]; *Caston v Costello*, 74 F Supp 2d 262, 268 [ED NY 1999]).[7] For this reason, *Batson* hearings are properly held and objections ruled on *dur-*

---

6. The United States Supreme Court has held that states retain discretion in fashioning rules governing timeliness of *Batson* objections (*see Ford v Georgia*, 498 US 411, 423 [1991]), and New York courts have recognized such objections to be timely when brought during jury selection but before the jury is sworn and the trial commences (*see People v Bolling*, 79 NY2d 317, 321 [1992]; *People v Scott*, 70 NY2d 420, 425 [1987]; *People v Harris*, 151 AD2d 961, 961 [1989]).

7. The exception may be when a defendant moves for a mistrial based upon the People's violation of *Batson*.

*ing* jury selection, not after the jury is sworn and jeopardy attaches, the instant scenario that resulted from County Court's ill-chosen course of procedure herein.[8] Having proceeded in this unfortunate manner, and even if defense counsel violated *Batson*, no case has held or implied that a trial court is thereafter permitted or compelled under such circumstances to declare a mistrial over a defendant's objection.

As a mistrial was not necessary, retrial of petitioner is barred by the prohibition against double jeopardy and, therefore, the indictment must be dismissed, with prejudice.

PETERS, J.P., ROSE, STEIN and EGAN JR., JJ., concur.

Adjudged that the petition is granted, without costs, and respondents are prohibited from retrying petitioner on the charges contained in Sullivan County indictment No. 61-2010.

---

**8.** Of course, on a defendant's appeal from a conviction, it has sometimes been necessary to remit for a *Batson* hearing where one was not held or the protocols not completed at trial (*see e.g. People v Payne*, 88 NY2d 172, 186-187 [1996]; *People v Hawthorne*, 80 NY2d 873, 874 [1992]; *see generally Batson v Kentucky*, 476 US at 100), or to vacate the judgment where a hearing is not feasible (*see e.g. People v Scott*, 70 NY2d 420, 426 [1987]).