Matter of Guiden v Jose-Decker (2026 NY Slip Op 00942)

Matter of Guiden v Jose-Decker

2026 NY Slip Op 00942

Decided on February 19, 2026

Appellate Division, Third Department

Mackey, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 19, 2026

CV-23-2238

[*1]In the Matter of Keymarroo Guiden, Petitioner,
vE. Danielle Jose-Decker, as County Judge of Sullivan County, et al., Respondents.

Calendar Date:January 8, 2026

Before: Garry, P.J., Ceresia, Fisher, McShan and Mackey, JJ.

Glenn A. Garber, PC, New York City (Glenn A. Garber of counsel), for petitioner.
Brian P. Conaty, District Attorney, Monticello (Michael J. Puma of counsel), for Brian P. Conaty, respondent.

Mackey, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to CPLR 506 [b] [1]) to prohibit respondents from trying petitioner in the County Court of Sullivan County on an indictment charging him with murder in the second degree.
In 2021, petitioner was arrested and charged with one count of second-degree murder in the 2014 death of his girlfriend after her dismembered remains were discovered in the vicinity of the residence they had shared. On the first day of the ensuing trial, after the jurors had been sworn and just before opening arguments were to commence, juror No. 8 — who was later discharged from the jury due to an unrelated issue — reported concerns to respondent County Judge of Sullivan County (hereinafter respondent) about comments that juror No. 5 had made about the alleged motivation of respondent Sullivan County District Attorney (hereinafter the DA) for prosecuting petitioner and the possibility of ongoing plea negotiations. Respondent questioned each juror about these comments, and some jurors reported additional comments made by juror No. 5 regarding the truthfulness of police officers as witnesses. Some jurors further reported that juror No. 5 had complained that his "integrity was being attacked" through respondent's questioning.
The People subsequently moved for a mistrial based upon juror No. 5's comments and their effect upon the other members of the jury, which motion petitioner opposed. Respondent granted the People's motion, finding that juror No. 5's comments evidenced that he was grossly unqualified and that the remaining jurors, by either failing to report his comments or to candidly discuss them with respondent during questioning, despite admonitions to do so, were irreparably tainted. Petitioner thereafter moved for dismissal of the indictment on double jeopardy grounds, which motion respondent denied upon finding that there was manifest necessity for the mistrial. Petitioner subsequently commenced this CPLR article 78 proceeding for a writ of prohibition barring a retrial.
It is well settled that the "extraordinary remedy" of prohibition is available where a criminal retrial would violate the constitutional right against double jeopardy (Matter of Snyder v Farrell, 242 AD3d 1480, 1481 [3d Dept 2025]; see Matter of Robar v LaBuda, 84 AD3d 129, 133 [3d Dept 2011]; see generally US Const 5th Amend; NY Const, art I, § 6). Once the jury has been impaneled and sworn, if a court grants a mistrial "without the consent or over the objection of a defendant, retrial is barred by double jeopardy protections unless there was manifest necessity for the mistrial or the ends of public justice would otherwise be defeated" (People v Ellis, 182 AD3d 791, 792 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1026 [2020]; see CPL 40.30 [1] [b]; Matter of Davis v Brown, 87 NY2d 626, 630 [1996]; Matter of Robar v LaBuda, 84 AD3d at 133-143). Whether to grant a mistrial is a matter committed [*2]to the sound discretion of the trial court, but the court must "consider alternatives to a mistrial and . . . obtain enough information so that it is clear that a mistrial is actually necessary" (People v Ferguson, 67 NY2d 383, 388 [1986]; see Matter of Enright v Siedlecki, 59 NY2d 195, 200 [1983]; People v Wilson, 163 AD3d 1049, 1050-1051 [3d Dept 2018]; Matter of Pronti v Allen, 13 AD3d 1034, 1036 [3d Dept 2004]). Relevant here, CPL 280.10 authorizes the court to declare a mistrial "[u]pon motion of the people, when there occurs during the trial, either inside or outside the courtroom, gross misconduct by . . . a juror, resulting in substantial and irreparable prejudice to the people's case" (CPL 280.10 [2]).
Initially, there is no dispute as to whether juror No. 8 was properly discharged, and petitioner's arguments similarly do not challenge the removal of juror No. 5. Instead, petitioner challenges respondent's conclusion that juror No. 5's comments tainted the remaining jurors in such a way as to prejudice the People's case substantially and irreparably (see CPL 280.10 [2]). The record reflects that juror No. 5's comments allegedly began the first day that he was with his fellow jurors, when he professed to having "personally campaigned" in support of a prior DA candidate and then openly shared his view that petitioner's prosecution was politically motivated. Of note, upon questioning, jurors Nos. 3, 6, 8 and 9 indicated that they had heard some version of juror No. 5's comments and several jurors remembered that, when the entire jury was present, there were continued discussions to this effect and regarding the importance of the case. Juror No. 5 allegedly made other statements to the jury to the effect that the DA may have been engaging in continued plea negotiations with petitioner. Significantly, juror No. 8 expressed that juror No. 5's comments "affected [his] perception of the case" and made him question the strength of the People's case against petitioner, juror No. 5 similarly indicated that other jurors had been talking about the "importance and the levity" of the case, and juror No. 11 likewise stated that juror No. 5's comments made jurors "confused" and speculated about "what direction this was going in" and the importance of possible plea negotiations. Juror No. 6 similarly indicated that the comments about plea bargaining led "everyone" to the impression that they "might be out of here before two weeks," which view juror No. 9 echoed. It was further alleged that juror No. 5 had also made comments heard by multiple jurors questioning the credibility of police officers.
When questioned by respondent, juror No. 5 sought to deflect responsibility to the other jurors, but stated his desire to "keep order" among his fellow jurors. Moreover, despite respondent ordering juror No. 5 not to discuss respondent's inquiry, another juror disclosed that juror No. 5 thereafter criticized the reporting and questioning of his prior comments. Notably[*3], several jurors indicated that juror No. 5's comments had been heard, shared and/or discussed amongst the jury and concerns were raised as to the morale and anxiety levels of the jury as a whole. The foregoing supports respondent's determination that juror No. 5 engaged in repeated, willful disobedience of explicit instructions not to discuss the case, lacked candor when questioned about the alleged comments made, and then disobeyed further instructions not to discuss respondent's inquiry. Under the circumstances presented, this pattern of conduct involving interference with the jury's independence and repeated failures to follow "the most basic of jury instructions" amounts to gross misconduct (People v Johnson, 217 AD2d 667, 668 [2d Dept 1995], lv denied 86 NY2d 843 [1995]; see People v Neulander, 162 AD3d 1763, 1767 [4th Dept 2018], affd 34 NY3d 110 [2019]; People v Paige, 134 AD3d 1048, 1054-1056 [2d Dept 2015], lv denied 27 NY3d 1073 [2016]; see generally People v Cruz, 210 AD3d 903, 903-904 [2d Dept 2022], lv denied 39 NY3d 985 [2022]).
We likewise agree that juror No. 5's comments and flagrant disregard for respondent's admonitions resulted in "substantial and irreparable prejudice" to the People's case (CPL 280.10 [2]). Although each juror averred that they could nevertheless remain fair and impartial, the record supports respondent's contrary conclusion in light of the hesitation of many jurors to disclose juror No. 5's conduct, the denial of others as to having heard any of the subject comments at all and another juror who gave contradictory answers about what he had heard, notwithstanding respondent's instructions to report improper attempts to influence the jury. Nothing in the record supports petitioner's assertion that respondent's instruction to report was limited to attempts to influence the jury by a third party. Upon this record, and in view of respondent's superior position to observe the jurors upon questioning, we accord respondent's rejection of their assertions of impartiality "the highest degree of respect" (Matter of Maynard v Wait, 246 AD2d 853, 854 [3d Dept 1998]) and find that the need for a mistrial was manifest (see Arizona v Washington, 434 US 497, 511-512 [1978]; Matter of Enright v Siedlecki, 59 NY2d at 201; see generally People v Hambrick, 96 AD3d 972, 974 [2d Dept 2012], lv denied 19 NY3d 1102 [2012]).
Finally, the record reflects that respondent expressly considered and rejected petitioner's proffered alternatives to mistrial, including further questioning of the jurors, proceeding with alternate jurors, and giving additional admonitions and/or curative instructions. To this end, respondent had already conducted extensive questioning of each juror as to what they had seen and heard and whether they could remain fair and impartial. In this regard, the record supports respondent's significant concerns regarding the jury's credibility as a whole in consideration of their collective persistent failures to timely [*4]and fully disclose juror No. 5's comments and the general lack of adherence to respondent's admonitions (compare Matter of Shipmon v Moran, 225 AD3d 1173, 1176 [4th Dept 2024]). Moreover, although a curative instruction may serve to mitigate prejudice resulting from improper remarks, respondent considered this alternative and the record supports her determination that the risk of prejudice resulting from juror No. 5's comments was too extensive to be cured by such an instruction (see Arizona v Washington, 434 US at 511-512; People v Smith, 176 AD3d 1114, 1117 [2d Dept 2019], lv denied 34 NY3d 1163 [2020]; compare People v Batticks, 35 NY3d 561, 568-569 [2020]). Further, both alternate jurors were questioned and indicated that they had each heard at least some of juror No. 5's criticisms of respondent's inquiry. The record thus discloses that respondent determined the need for a mistrial after careful consideration of the appropriate alternatives. In view of the foregoing conclusions, defendant's retrial is not barred by double jeopardy and, accordingly, we dismiss the petition (see Matter of Enright v Siedlecki, 59 NY2d at 202; People v Ellis, 182 AD3d at 792; Matter of Maynard v Wait, 246 AD2d at 855). The parties' remaining contentions, to the extent properly before us, have either been rendered academic by our determination or found to be unpersuasive.
Garry, P.J., Ceresia, Fisher and McShan, JJ., concur.
ADJUDGED that the petition is dismissed, without costs.