■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JASON FULTON, Appellant. [807 NYS2d 153]—

Peters, J. Appeal from a judgment of the County Court of Schenectady County (Hoye, J.), rendered July 14, 2003, upon a verdict convicting defendant of the crimes of murder in the second degree and assault in the third degree.

On June 27, 2002, defendant assaulted Jeremy Walter (hereinafter the victim) with a baseball bat, causing his death. Defendant's friend, Kevin Mineconzo, participated in the assault. In August 2002, defendant was charged with the crimes of murder in the second degree (two counts), assault in the first degree and assault in the third degree. After a pretrial *Molineux* hearing, County Court found the testimony from defendant's ex-girlfriend, Brooke Ricci, detailing a fight she had with defendant two weeks prior to the fatal incident, to be admissible.

During the second round of jury selection, the People raised two *Batson* challenges, contending that the defense was routinely striking women from the jury. When the first challenge was made, the defense provided a pretextual explanation for the challenge without any ruling by County Court as to whether the People had made out a prima facie case. After reviewing all of the peremptory challenges, County Court noted that it was the People, not the defense, who had lodged more challenges to female jurors. The People withdrew this challenge.

After the People used 14 peremptories and the defense 12, the People raised their second *Batson* challenge when the defense proposed to exercise a peremptory challenge against a female juror. It recounted the peremptory challenges used in that round and further explained, "We don't have a woman on this jury, which is not, I know, the basis for a challenge, and we are now at . . . eight jurors, and I believe that there is a pattern of striking women panelists who don't seem to me to have anything in common." Asserting that a prima facie case had been demonstrated to demand a gender neutral explanation, County Court requested defense counsel to provide a basis for his challenge without first assessing the People's proof. Counsel explained that when he was seated near this proposed juror during recess, he "sense[d] that there was some real distance between the two of [them]" and that she was "closed off from [him]." He also stated that he did not like her responses to some of the questions regarding her prior jury service. Finally, his cocounsel added that he was concerned that she would identify with defendant's ex-girlfriend because she had a daugh-

ter who was of the same age. The People argued that these explanations were pretextual and that other similarly situated male jurors were not being challenged. County Court, still not determining whether the People had made out a prima facie case, found the reasons pretextual and seated the juror.

Evidence at trial revealed that Ricci dated defendant for approximately four years and that their relationship ended shortly after a heated exchange two weeks prior to the death of the victim. During that exchange, defendant threw a lamp at Ricci, grabbed her throat and threw her onto the bed. When Ricci informed defendant that she no longer wanted to be in a romantic relationship with him, he told her that he might "kill somebody" that he saw with her, although she believed he was joking. On the night of the victim's death, Ricci, along with the victim and some other friends, went to a bar. Defendant and Mineconzo arrived there and Ricci and defendant exchanged words. At one point, defendant asked Ricci who the victim was. She explained that he was "just a friend." After Ricci left with the victim and went to a friend's house, defendant was overheard telling people that he was going to "kill that . . . kid" and that he was going to "beat his ass."

Defendant arrived with Mineconzo at the house of Ricci's friend in an agitated state. After being rebuffed by an individual who answered the door, they left, only to return later. According to Mineconzo, they planned to get into a fight with whomever was in the house. Upon their return, the victim went outside with a bat in hand and Ricci followed shortly thereafter. The victim took a swing at defendant with the bat and defendant wrestled the bat away from him. Defendant then advanced toward the victim, who was retreating, and struck him in the temple. After he was knocked to the ground, defendant continued to hit and kick him several more times; Mineconzo assisted in the assault. Although Ricci attempted to intervene, she was pushed to the ground by defendant. The victim later died at the hospital and Ricci suffered bodily injuries.

At trial, defendant testified on his own behalf.[1] Although he admitted to the assault, he denied that he tried to kill the victim. Convicted of one count of murder in the second degree and one count of assault in the third degree, and sentenced to an aggregate prison term of 22 years to life, he appeals.

First addressing the *Molineux* ruling, it is established that

---

1. Midway through the trial, Mineconzo pleaded guilty to the crime of attempted assault in the first degree.

evidence of prior bad acts is not admissible to prove propensity, but may be offered for motive if its probative value outweighs the danger of undue prejudice (*see People v Rojas*, 97 NY2d 32, 37 [2001]; *People v Shannon [Thompson]*, 273 AD2d 505, 507 [2000], *lvs denied* 95 NY2d 892, 893 [2000]). Here, County Court properly ruled that defendant and Ricci's breakup shortly after their violent episode provided evidence that defendant had a motive to hurt the victim who he believed to be Ricci's new boyfriend.

We next consider whether County Court violated defendant's constitutional rights to due process and equal protection by granting the People's motion pursuant to *Batson v Kentucky* (476 US 79 [1986]). Race or gender-based discrimination has no place in the jury selection process; even "individual jurors themselves have a right to nondiscriminatory jury selection procedures" (*J. E. B. v Alabama ex rel. T. B.*, 511 US 127, 140-141 [1994]). When a *Batson* challenge is raised, a three-step test is employed to determine whether the peremptory challenge is exercised for a reason that violates the Equal Protection Clause of the Fourteenth Amendment (*see Johnson v California*, — US —, —, 125 S Ct 2410, 2416 [2005]). The party raising the objection must make a prima facie showing that the challenge was related to the race or gender of the juror. Once this showing is made, the burden shifts to the party who exercised the peremptory challenge to provide a nondiscriminatory reason. The trial court must then determine whether the reason given is genuine or pretextual (*see id.*, — US at —, 125 S Ct at 2416).

Our review is limited. Once the trial court rules on the ultimate question of intentional discrimination, an appellate court is not permitted to "revisit the issue of whether a prima facie case has been made" (*People v Smocum*, 99 NY2d 418, 422 [2003]); the issue becomes moot (*see Hernandez v New York*, 500 US 352, 359 [1991]).[2] Here, defendant was provided with an opportunity to explain his peremptory challenge. Once County Court considered those reasons and determined that they were pretextual, we are precluded, on appellate review, from revisiting the issue of whether the prima facie burden was satisfied (*see Durant v Strack*, 151 F Supp 2d 226, 237 [2001]).

*Durant v Strack* (*supra*) aptly illustrates this principle. During jury selection in a state prosecution, the People were asked to provide a nondiscriminatory explanation for challenging a

---

2. This rule is intended to prevent a reviewing court from "obscur[ing] the crucial factual issue of discrimination" (*Durant v Strack*, 151 F Supp 2d 226, 237 [2001]) by "focusing on the prima facie showing rather than resolving the question of intentional discrimination" (*id.* at 236).

juror. The prosecutor explained that it was "because of 'her demeanor with me, the way she was looking at me, the interaction I had with her' " (*id.* at 231). The trial judge rejected this reasoning and seated the juror. Upon appeal, the Appellate Division, Second Department, revisited step one, and found that the defense failed to make out a prima facie case (*see People v Durant*, 250 AD2d 698, 699-700 [1998], *lv denied* 92 NY2d 879 [1998]). Upon habeas corpus review, the District Court, rejecting this procedure, iterated that after "a party's race-neutral explanation for its actions is rejected and results in a finding of purposeful discrimination, the court may not disregard that finding and revert back to stage one of the *Batson/Aikens* analysis" (*Durant v Strack, supra* at 242). Constrained by this limited review, we discern no error in County Court's step two and three analysis and its consequential seating of this juror (*see People v Hernandez*, 75 NY2d 350, 356 [1990], *affd* 500 US 352 [1991]).

Challenging the sufficiency and weight of the evidence supporting his conviction, defendant contends that because the act was "quintessentially" an intentional act and he was acquitted of intentional murder, the verdict is not amply supported. This challenge was not properly preserved (*see* CPL 290.10 [1]). In any event, the jury could have reasonably found that defendant did not intend to cause the victim's death. Despite testimony that defendant was overheard saying that he wanted to kill the victim, other evidence revealed that defendant's plan was only to engage the victim and his friends in a fight. Moreover, defendant did not confront the victim armed with a weapon. Rather, he came into possession of the bat only after wrestling it from the victim. From this, the jury could have formulated a valid line of reasoning to conclude that defendant acted with depraved indifference to the victim's plight rather than with an intent to kill. While *People v Payne* (3 NY3d 266 [2004]), *People v Gonzalez* (1 NY3d 464 [2004]), *People v Hafeez* (100 NY2d 253 [2003]) and *People v Sanchez* (98 NY2d 373 [2002]) guide that depraved indifference murder may not be charged when the conduct reveals an intent to kill, "as a matter of law, a jury is [not] foreclosed from considering a depraved indifference murder charge whenever a death is the result of a one-on-one confrontation" (*People v Atkinson*, 21 AD3d 145, 157 [2005]).

The matter of sentencing rests within the sound discretion of the trial court. As we find no extraordinary circumstances or any abuse of discretion by County Court in the imposition of the sentence, we will not disturb it.

Cardona, P.J., Spain, Carpinello and Kane, JJ., concur. Ordered that the judgment is affirmed.