[911 NYS2d 483]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHA-
KEEM KNOWLES, Appellant.

Third Department, October 28, 2010

18

**APPEARANCES OF COUNSEL**

*Mitch Kessler*, Cohoes, for appellant.

*Robert M. Carney, District Attorney*, Schenectady (*Gerald A. Dwyer* of counsel), for respondent.

**OPINION OF THE COURT**

Spain, J.P.

Following a retrial, defendant was again convicted by a jury of felony murder, robbery in the first degree, criminal sale of a controlled substance in the third degree and criminal possession of a weapon in the fourth degree. The convictions stem from an incident summarized in a decision of this Court on defendant's prior appeal in which a new trial was ordered due to certain trial errors (42 AD3d 662 [2007]). The evidence at trial established that defendant fatally stabbed Jason Battaglia on March 14, 2002 outside of an apartment building in the City of Schenectady, Schenectady County in a dispute over a drug sale. Upon his convictions, County Court imposed an aggregate sentence of 25 years to life in prison, with five years of post-release supervision. Defendant now appeals.

Initially, defendant, who is black, contends that his right to equal protection of the laws was violated when County Court denied his *Batson* objections (*see Batson v Kentucky*, 476 US 79 [1986]) to the People's exercise of peremptory challenges to

exclude all three black jurors from the venire. Defendant argues that the race-neutral reasons offered by the People for these strikes were pretexts for race discrimination. The transcript of the voir dire reflects that during the second round of jury selection, after jurors were removed for cause, the People peremptorily struck both remaining black jurors, juror Nos. 81 and 224; there were reportedly no black people in the first round. Defendant raised a race-based *Batson* objection. In response to County Court's directive to state his reasons, the prosecutor explained that he sought to exclude juror No. 81 because her responses indicated that she oversees an educational opportunity program in which the victim's mother is a student, and she may be called to testify (she was, in fact, the first trial witness). He reasoned that he did not "want to take a chance that something in that relationship affects [the] juror's outlook on this case." The defense made no argument that this reason was not race-neutral or was pretextual. With regard to juror No. 224, the prosecutor stated that his reason for striking her was that she "volunteered that she reads the Bible"; he emphasized that there was nothing wrong with this, but that it was "an unusual reading choice . . . that suggests to me that she might be a person who is on the spectrum of forgiveness rather than judgment." Defense counsel argued that the reason given was a pretext as there were many white jurors who reported being active in their churches who were not stricken, and the prosecutor had not asked follow-up questions of juror No. 224 on this point. The prosecutor explained that he had purposefully exercised restraint in not probing this juror's religious beliefs, which he believed "people often are reluctant to talk about." He further clarified that being active in a church "can mean many things . . . often very secular . . . community-based things" which he considered a "positive" attribute in a juror, as distinguished from a person who reads the Bible, which he viewed to be a "flag" that the juror might be prone toward forgiveness. The court concluded that the reasons were race-neutral and were genuine reasons for the exclusion of these jurors and not pretextual ones, and denied defendant's objection.

During the third round of jury selection, defendant again raised a *Batson* objection after the People exercised a peremptory challenge to strike the only remaining black person on the panel, juror No. 11. At County Court's direction, the prosecutor elucidated that the District Attorney's office had prosecuted her

relatives, including at least one—and likely two—of her siblings, and that she appeared to be evasive about not knowing the ages of those siblings when the prosecutor attempted to connect her to them. The court accepted this reason, finding it to be reasonable.

Under the three-step test formulated under *Batson* and its progeny to determine whether peremptory challenges are being employed as a tool of invidious discrimination, the party challenging the use of peremptories must make out a prima facie case of purposeful discrimination and, if accomplished, the nonmovant must come forward with race-neutral reasons for each of the peremptories challenged; "once race-neutral reasons are given, the inference of discrimination is overcome" (*People v Smocum*, 99 NY2d 418, 422 [2003]). "The third step of the *Batson* inquiry requires the trial court to make an ultimate *[factual] determination* on the issue of discriminatory intent based on all of the facts and circumstances presented . . . focused on the *credibility* of the race-neutral reasons" (*id.* at 422 [emphases added]).

■ The first prong is not in issue. Where, as here, "a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot" (*Hernandez v New York*, 500 US 352, 359 [1991]; *see People v Smocum*, 99 NY2d at 423; *People v Fulton*, 24 AD3d 959, 962 [2005], *lv denied* 6 NY3d 847 [2006], *cert denied* 549 US 1037 [2006]). As to the second prong of the analysis, a neutral explanation in this context is "an explanation based on something other than the race of the juror" and "the issue is the facial validity of the prosecutor's explanation" (*Hernandez v New York*, 500 US at 360). The reasons need not be "persuasive, or even plausible" to others (*Purkett v Elem*, 514 US 765, 768 [1995]; *see People v Morgan*, 24 AD3d 950, 951 [2005], *lv denied* 6 NY3d 815 [2006]) and may be "ill-founded" (*People v Allen*, 86 NY2d 101, 109 [1995]), so long as they do not violate equal protection (*see id.*; *see also Purkett v Elem*, 514 US at 769; *Hernandez v New York*, 500 US at 359). Here, discriminatory intent was not inherent in any of the prosecutor's explanations, and County Court correctly determined that all of the reasons were, in fact, entirely race-neutral and overcame any inference of discrimination (*see Purkett v Elem*, 514 US at 768).

Thus, we turn to the third and final prong, the trial court's "difficult burden of assessing prosecutors' motives" (*Batson v*

*Kentucky*, 476 US at 105 [Marshall, J., concurring]). Here, County Court determined that the prosecutor's stated justifications for striking these jurors were not a pretext for racial discrimination and that defendant had failed to prove purposeful racial discrimination (*see Purkett v Elem*, 514 US at 767; *People v Wells*, 7 NY3d 51, 58 [2006]). "[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal" (*Hernandez v New York*, 500 US at 364) because it "largely will turn on evaluation of credibility" (*Batson v Kentucky*, 476 US at 98 n 21), i.e., typically, "the decisive question will be whether counsel's race-neutral explanation[s] . . . should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the *demeanor of the attorney* who exercises the challenge" (*Hernandez v New York*, 500 US at 365 [emphasis added]).

County Court expressly believed that all of the prosecutor's stated reasons were genuine and not pretextual, and we discern no basis upon which to disagree with that firsthand factual finding. As to juror No. 81, defendant never argued that the reason given for her exclusion—she oversaw the educational program for the victim's mother—was pretextual and, thus, that claim is unpreserved (*see People v James*, 99 NY2d 264, 271-272 [2002]). By not responding to the reason given, defense counsel did not meet his burden of showing pretext (*see People v Skervin*, 13 AD3d 661, 662 [2004], *lv denied* 5 NY3d 833 [2005]). Likewise, the prosecutor's exercise of a peremptory challenge as to juror No. 11 based upon the good faith belief that he had prosecuted several relatives with the same name, including siblings (and that she may have been evasive), has, when credited, been found to be not racially motivated (*see People v Morgan*, 24 AD3d at 951; *People v Walker*, 285 AD2d 660, 664 [2001], *lv denied* 97 NY2d 659 [2001], *cert denied* 535 US 1064 [2002]). County Court's conclusion that this explanation was reasonable and nonpretextual is fully supported and will not be disturbed.

With regard to juror No. 224, contrary to defendant's claims, we cannot conclude that the prosecutor's intuitive sense that a person who cites Bible reading as her free time activity might favor forgiveness over judgment/conviction is implausible, irrational, fantastic, unconvincing, incredible, suspicious or clearly erroneous (*see Snyder v Louisiana*, 552 US 472, 477-485 [2008]; *Purkett v Elem*, 514 US at 768) or that it "does not hold

up" (*Miller-El v Dretke*, 545 US 231, 252 [2005]). We accord great deference to County Court's credibility determination given its ability to observe this juror and because "reasonable minds could disagree at this [third] level of review on this record" (*People v Hernandez*, 75 NY2d 350, 356 [1990], *affd* 500 US 352 [1991]). To the extent that defendant argues that pretext is shown by the fact that several white jurors who stated they were active in their churches were not peremptorily stricken by the prosecutor, none of those jurors volunteered that they read the Bible in their free time; we do not view as constitutionally impermissible the prosecutor's distinction between Bible reading and other church-related activities (*see e.g. United States v Brown*, 352 F3d 654, 658-661 [2d Cir 2003]). We also decline to adopt defendant's subjective and categorical supposition that all persons active in their churches are necessarily Bible readers or prone to forgiveness. Thus, while the exclusion of all blacks from the panel is certainly a compelling factor bearing on our third-prong analysis, "side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve," to the extent possible on this very limited cold record, simply do not provide evidence of purposeful discrimination so as to satisfy defendant's burden, i.e., the record does not support a finding that "similarly situated" nonblack jurors were retained or that, but for race, the excluded black jurors "should have been . . . ideal juror[s] in the eyes of a prosecutor" (*Miller-El v Dretke*, 545 US at 241, 247). Each of those nonblack jurors also possessed other important attributes for counsel to weigh, and the fact "[t]hat there was less than complete uniformity in the application of these factors does not establish that these factors were pretextual" (*People v Richie*, 217 AD2d 84, 89 [1995], *lv denied* 88 NY2d 940 [1996]; *see People v Allen*, 86 NY2d at 110).[1] Thus, we cannot conclude that there was an impermissibly uneven application of neutral fac-

---

1. Notably, defendant did *not* raise a *religion*-based *Batson* objection to the strike against juror No. 224 (*cf. United States v Brown*, 352 F3d 654 [2d Cir 2003]; *United States v DeJesus*, 347 F3d 500 [3d Cir 2003], *cert denied* 541 US 1086 [2004]; *United States v Seals*, 987 F2d 1102 [5th Cir 1993], *cert denied* 510 US 853 [1993]; *Haile v State*, 672 So 2d 555 [Fla Dist Ct App 1996]) or argue (or tender any proof) that the exclusion of Bible-reading individuals has a disparate impact on black potential jurors (*see Hernandez v New York*, 500 US at 363; *Washington v Davis*, 426 US 229, 242 [1976]; *United States v DeJesus, supra*). The United States Supreme Court has not yet ruled on whether *Batson* extends to religion-based peremptory challenges (*see Davis v Minnesota*, 511 US 1115, 1115 [1994]; *see also Miller-El v Dretke*, 545 US at 270 [Breyer, J., concurring]).

tors. Further, in addition to the reasons stated by the prosecutor for exercising peremptories as to each of the jurors in issue, County Court—in making its ultimate determination on the issue of discriminatory intent—was entitled to take into consideration the totality of the facts and circumstances, including its own observations of the jurors and counsel and the additional information gleaned from the jurors during voir dire, in assessing the believability of the reasons cited for their exclusion (*see People v Smocum*, 99 NY2d at 422; *see also Snyder v Louisiana*, 552 US at 478; *Hernandez v New York*, 500 US at 363). In the final analysis, it was defendant's burden as movant "to make a record that would support a finding of pretext" (*People v Smocum*, 99 NY2d at 422). We find no basis in this record upon which to disagree with County Court's factual determination that defendant failed to do so.

■ We next turn to defendant's claim that County Court improperly denied his for-cause challenge to prospective juror No. 197, causing him to peremptorily challenge this juror and exhaust his peremptory challenges before completion of jury selection (*see* CPL 270.20 [2]). During questioning of jurors by defense counsel regarding their ability to render a verdict based upon the evidence rather than emotion, juror No. 197 indicated that she "may have a problem" as she is a "pretty emotional person" but would "try [her] hardest to be . . . objective and to be fair." However, upon further questioning, she provided assurance that her logic and not her emotions would guide her verdict, thereby providing the requisite "unequivocal assurance of impartiality" (*People v Arnold*, 96 NY2d 358, 364 [2001]; *see People v Chambers*, 97 NY2d 417, 419 [2002]; *People v Johnson*, 94 NY2d 600, 612-614 [2000]). Thus, viewing the record of voir dire as a whole, we find no abuse of discretion in the court's denial of defendant's challenge for cause (*see People v DeDeo*, 59 AD3d 846, 848 [2009], *lv denied* 12 NY3d 782 [2009]).

■ Defendant further ascribes error to County Court's dismissal, on day two of jury selection, of a sworn juror (No. 3), after the court was advised[2] by that juror in a telephone call that her father-in-law had passed away about one hour earlier and no funeral arrangements had yet been made. When questioned by defense counsel, the juror guessed that she might be unavailable for three days. Defendant is correct

---

2. The juror had just reported the death in her family to the Commissioner of Jurors.

that, because the dismissal occurred before the full jury was sworn, CPL 270.15 (3), and not CPL 270.35 (1), applies.[3] However, it has been recognized that a court's authority to dismiss a sworn juror before the entire panel is selected is as broad as it is for discharge of a sworn juror after impanelment (see People v Oyewole, 220 AD2d 624, 624 [1995], lv denied 87 NY2d 905 [1995]; People v Green, 216 AD2d 170, 171 [1995], lv denied 86 NY2d 842 [1995]). A recent death in a juror's immediate family certainly authorizes a trial judge, in his or her discretion, to release that juror as unavailable and unable to serve due to incapacity (see CPL 270.15 [3]; see e.g. People v Faulkner, 55 AD3d 924, 925 [2008], lv denied 11 NY3d 924 [2009] [CPL 270.35]; People v Shelton, 31 AD3d 791, 791-792 [2006], lv denied 7 NY3d 851 [2006]).

Finally, the introduction of the testimony of Cecelia Simmons from the first trial did not violate either defendant's right to confrontation or CPL 670.10, which codifies a hearsay exception for prior testimony of an unavailable witness (see Barber v Page, 390 US 719, 722 [1968]; People v Arroyo, 54 NY2d 567, 569-574 [1982]; People v Spencer, 219 AD2d 259, 264 [1996], lv denied 88 NY2d 1024 [1996]; People v Muccia, 139 AD2d 838, 839 [1988]). When called to testify at the second trial as an eyewitness, Simmons—defendant's partner in this drug sale who pleaded guilty to murder in the second degree pursuant to a plea agreement requiring her to testify at defendant's trial—only briefly cooperated and then recanted or seemingly contradicted parts of her prior testimony, intermittently refusing to testify. After her testimony was adjourned and counsel appointed to represent her, she refused to testify and was held in contempt. Under these circumstances, her refusal to testify made her unavailable and constituted "incapacity" under CPL 670.10 (1), and her testimony at the first trial, at which she was extensively cross-examined, was properly admitted at this trial following the protracted good faith efforts to induce her to testify in person (see People v Whitley, 14 AD3d 403, 404-405 [2005], lv denied 4 NY3d 892 [2005]; People v Barber, 2 AD3d 1290,

---

3. Although County Court twice correctly cited CPL 270.15, it read CPL 270.35 aloud and neither party objected thereto although given an opportunity to be heard. Thus, defendant's contention that there was reliance on the incorrect statute is unpreserved for our review. In any event, any error was harmless.

1291 [2003], *lv denied* 2 NY3d 761 [2004]; *People v Spencer,* 219 AD2d at 264; *People v Muccia,* 139 AD2d at 839). Defendant's remaining claims similarly lack merit.

LAHTINEN, KAVANAGH, STEIN and GARRY, JJ., concur.

Ordered that the judgment is affirmed.