Matter of Duffy v New York State Bd. of Parole (2018 NY Slip Op 05002)





Matter of Duffy v New York State Bd. of Parole


2018 NY Slip Op 05002


Decided on July 5, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 5, 2018

525786

[*1]In the Matter of JOHN DUFFY, Petitioner,
v
NEW YORK STATE BOARD OF PAROLE, Respondent.

Calendar Date: June 7, 2018

Before: Garry, P.J., McCarthy, Lynch, Devine and Mulvey, JJ.


The Legal Aid Society, New York City (Cynthia Conti-Cook of counsel), for petitioner.
Barbara D. Underwood, Attorney General, Albany (Frank Brady of counsel), for respondent.



MEMORANDUM AND JUDGMENT
Garry, P.J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Sullivan County) to review a determination of respondent rescinding petitioner's open parole release date and imposing a hold period of 24 months.
In 1979, petitioner, then 19 years old, repeatedly stabbed his friend, the 15-year-old victim, following an argument. He then fled the scene, and the victim died of massive hemorrhaging caused by the multiple stab wounds. Petitioner was thereafter convicted of murder in the second degree, following a jury trial, and was sentenced to a prison term of 20 years to life (People v Duffy, 93 AD2d 865 [1983], lv denied 59 NY2d 765 [1983]).
Petitioner first became eligible for parole in 2001, and has now made nine appearances before respondent. During the course of these appearances, the deeply traumatized family members of the victim have consistently and vigorously opposed parole, providing respondent with extensive written submissions describing the devastating impact of petitioner's crime and making repeated personal appearances before respondent. At petitioner's ninth appearance in 2016, respondent granted him parole over the family's continued opposition, with one commissioner dissenting, and set an open release date in August 2016. Prior to this release date, respondent temporarily suspended parole while it reviewed two video recordings prepared by the victim's family (see 9 NYCRR 8002.4; Executive Law § 259-i [2] [c] [A] [v]). These recordings had originally been submitted as videotapes to respondent in 2001 and 2007, but had apparently [*2]not been filed as part of petitioner's parole folder. After viewing the recordings, which had been converted into DVDs, respondent held a rescission hearing and then issued a decision that rescinded petitioner's open release date and imposed a 24-month hold. The decision was upheld on administrative appeal, and petitioner commenced this CPLR proceeding challenging the determination.
As pertinent here, respondent was authorized to rescind petitioner's parole only if there was substantial evidence revealing "significant information" that existed before respondent made the parole release decision but "was not known by [respondent]" (9 NYCRR 8002.5 [b] [2] [i]; see 9 NYCRR 8002.5 [d] [1]; Matter of Thorn v New York State Bd. of Parole, 156 AD3d 980, 981 [2017], lv denied 31 NY3d 902 [2018]). It is undisputed that, as part of the 2016 parole release decision, respondent took into account the traumatic impact of the crime upon the victim's family members and, considering all factors, granted him parole. The record does not support a finding that either of the DVDs contains any information that was not known to respondent before it granted parole to petitioner. For these reasons, we find that the decision to rescind parole was not supported by substantial evidence.
It bears clearly stating that the DVDs — which contain video statements by family members, among other things — are profoundly compelling and even heart-wrenching in their depiction of the family's tremendous grief and suffering. However, so too are the many previous submissions provided by the very same family members. The family's prior submissions in the record include highly articulate, impassioned, and detailed descriptions of the family's grief and the devastating long-term consequences of petitioner's crime upon their physical, emotional and financial well-being, as well as their safety concerns and their determined opposition to petitioner's release. As previously described by this Court, the family's statements "readily reflect the raw emotions of a close-knit family traumatized by [petitioner's crime]" (Matter of Duffy v New York State Dept. of Corr. & Community Supervision, 132 AD3d 1207, 1209 [2015]). Further, the prior submissions reveal that some of the most moving materials shown in the DVDs — such as family photographs and a remembrance quilt made in the victim's memory — have previously been submitted or brought by family members to personal interviews with respondent.
As noted above, the DVDs themselves were also not new to respondent; they were originally submitted in 2001 and 2007. A 2001 letter to respondent in the record, submitted by one of the victim's family members, clearly references the submission of the first videotape. Respondent was thus fully on notice, from the time of petitioner's first parole appearance, that the family members had presented their grief in audiovisual form. The record does not indicate that respondent failed to examine these materials. Instead, at some unknown time, audiovisual materials submitted by victims were apparently separated from inmates' parole folders for storage. Later, as part of an agency-wide effort to reunite such materials with the appropriate folders, the 2001 and 2007 videotapes were converted to DVD format, and they were provided to respondent shortly after it granted parole to petitioner. Any alleged failure on respondent's part to consider these materials earlier — not due to a failure to communicate with victims or to offer them opportunities to provide statements, but solely as the apparent result of respondent's own inefficient filing system — cannot rationally be found to convert materials that had been provided to it 9 and 15 years before into new information that was not previously available or known.
Most significantly, other challenges to parole rescission determinations based upon victim impact statements have exclusively involved new factual information that had not previously been known to respondent because the victims either had not provided statements or [*3]had not been given opportunities to do so (see Matter of Costello v New York State Bd. of Parole, 23 NY3d 1002, 1004 [2014], revg 101 AD3d 1512, 1514 [2012]; Matter of Thorn v New York State Bd. of Parole, 156 AD3d at 982; Matter of Spataro v New York State Dept. of Corr. & Community Supervision, 137 AD3d 1562, 1563 [2016], lv denied 27 NY3d 913 [2016]; Matter of Diaz v Evans, 90 AD3d 1371, 1372 [2011]; Matter of Raheem v New York State Bd. of Parole, 66 AD3d 1270, 1271-1272 [2009], lv denied 14 NY3d 702 [2010]; Matter of Pugh v New York State Bd. of Parole, 19 AD3d 991, 992 [2005], lv denied 5 NY3d 713 [2005]). Our review of the case law has revealed no other case involving a parole rescission decision that, as here, is based upon additional input from victims or family members who had previously submitted impact statements to respondent — much less multiple submissions of a thorough and extensive nature over many years.
In rescinding petitioner's parole, respondent did not make the required finding that there was substantial evidence of "significant information" that "was not [previously] known by [respondent]" (9 NYCRR 8002.5 [b] [2] [i]; see 9 NYCRR 8002.5 [d] [1]; Matter of Thorn v New York State Bd. of Parole, 156 AD3d at 981). Instead, respondent found the DVDs themselves to be "new and substantial," based upon its finding that the audiovisual presentation "creates a new experience of the information contained within." However, respondent's assertion that the family members' grief as depicted in the DVDs can be considered new "information" within the meaning of the controlling regulation is so vague and subjective as to make meaningful judicial review of the rationality of the determination impossible. The record here simply does not reveal significant information that was not previously known to respondent. As respondent's determination to rescind petitioner's parole was not based upon substantial evidence, its determination must be annulled and petitioner's parole release must be reinstated (see 9 NYCRR 8002.5 [b] [2] [i]; [d] [1]; see also Matter of Costello v New York State Bd. of Parole, 23 NY3d at 1004).
Lynch and Devine, JJ., concur.




McCarthy, J. (dissenting).


Because respondent did not err in reaching its determination to rescind petitioner's open release date, we respectfully dissent. "Respondent has broad discretion to rescind parole, provided there is substantial evidence consisting of either 'case developments' occurring subsequent to the decision to grant release or 'significant information' that existed previously but was not known by respondent at the time that a release date was granted" (Matter of Thorn v New York State Bd. of Parole, 156 AD3d 980, 981 [2017], lv denied 31 NY3d 902 [2018], quoting 9 NYCRR 8002.5 [b] [2] [i], [ii]; [d] [1]). Respondent is required to consider both current and prior impact statements from victims before parole release is ordered (see Executive Law § 259-i [2] [c] [A] [v]), and courts have emphasized the importance of such statements (see Matter of Costello v New York State Bd. of Parole, 23 NY3d 1002, 1004 [2014]; Matter of Thorn v New York State Bd. of Parole, 156 AD3d at 982). This Court has concluded that respondent is not precluded from "considering victim impact statements submitted after an open release date has been granted in determining whether parole should be rescinded," recognizing that such statements "can constitute significant information which . . . may justify . . . rescission of parole" (Matter of Thorn v New York State Bd. of Parole, 156 AD3d at 982 [internal quotation marks and citations omitted]; see Matter of Spataro v New York State Dept. of Corr. & Community Supervision, 137 AD3d 1562, 1563 [2016], lv denied 27 NY3d 913 [2016]; Matter [*4]of Pugh v New York State Bd. of Parole, 19 AD3d 991, 992-993 [2005], lv denied 5 NY3d 713 [2005]; compare Matter of Costello v New York State Bd. of Parole, 23 NY3d at 1004).
Here, after petitioner's ninth appearance before respondent and with one commissioner dissenting, respondent granted petitioner parole with an open release date. Shortly thereafter, and prior to that release date, petitioner's release was temporarily suspended after respondent was provided with two DVDs from the victim's family that had been made in 2001 and 2007 and that had not been forwarded to or considered by respondent when it had recently granted petitioner parole release (see 9 NYCRR 8002.4; Executive Law § 259-i [2] [c] [A] [v]). After viewing the DVDs, which contained, among other things, video statements from the victim's mother and sister and pictures of the victim and his family, respondent held a rescission hearing. Respondent then issued a decision rescinding petitioner's open release date based upon the DVDs, which it concluded constituted "new and substantial" information, and imposed a 24-month hold. In rescinding, respondent found that these accounts "add real value concerning the multi-generational impact of [petitioner's] crime upon the victim's family [members] and a continuing concern for their safety and the safety of others upon [his] release." The decision was upheld on administrative appeal, and petitioner commenced this CPLR article 78 proceeding challenging respondent's determination.
Although the DVDs in question, which reflect the depth of the anguish and suffering experienced by the victim's family as a result of his murder, were apparently submitted for consideration in prior parole decisions, the record does not disclose that these DVDs were actually ever considered [FN1]. The Director of the Office of Victim Assistance at the Department of Corrections and Community Supervision testified that, after the Division of Parole merged with the Department of Correctional Services, her office began the process of going through the Division's uncatalogued boxes of victim impact materials to attach them to inmate files. During this process, in early July 2016 she found the 2001 VHS tape, which was converted to a DVD and submitted to respondent just after its decision to grant petitioner parole release. A 2007 recording was also found, converted to a DVD and turned over to respondent later in July 2016. Importantly, substantial evidence in the record supports respondent's finding that the DVDs were not presented to it for viewing with regard to this most recent parole interview and its decision to set an open release date. Although the majority posits that these DVDs have been available since petitioner's first appearance before respondent and that it was at least on notice of the existence of these recordings because they are referenced in other materials, we note that notice and availability of the DVDs are irrelevant under the pertinent regulation. Instead, the only question before us is whether substantial evidence supports the conclusion that the DVDs contained significant information that was not known by respondent at the time it set an open release date (see 9 NYCRR 8002.5 [b] [2] [i]).
Turning to that question, we conclude that respondent did not err in determining that the DVDs constituted significant, unknown information because, as compared to the information that could be communicated by written submissions alone, the DVDs provided additional insights into the sincerity and severity of anguish and fear felt by the victim's family members. No [*5]member of the victim's family spoke at the 1983 sentencing and the presentence report's brief summary of the Probation Department's interview with the victim's mother reflects only the short-term grief and impact of petitioner's crime on the members of the victim's family. Thus, unlike any of the written materials considered by respondent for this particular parole determination, the DVDs, recorded decades after petitioner's act of murder, capture the deeply personal, long-term impact of that crime on the victim's family. Specifically, the DVDs convey the extent of grief and fear felt by the victim's family members in a manner that even their contemporaneous letters do not.
The majority concludes, in essence, that the DVDs merely presented facts that were already known by respondent in a new medium and that this is not sufficient under the regulation governing rescission. This analysis misses the point of a victim impact video. Similar to a day-in-the-life video — which is often presented at a jury trial to fully and more accurately convey the difficulties and limitations of a severely injured party in a way that bare testimony cannot — a victim impact video is able to communicate the severity of a victim's feelings with more depth and powerful effect than any written statement. Although respondent had occasion to conduct face-to-face interviews with the victim's family members before its earlier determinations denying petitioner parole, it is undisputed that, for this particular parole determination, there were no such interviews. Instead, respondent had before it only reports containing secondhand accounts of the earlier interviews. Accordingly, the DVDs in question are the only evidence in this record permitting respondent to directly see and hear the sincerity of the grief and fear experienced by the victim's family.
The cases cited by the majority are distinguishable, and our rationale herein does not, as the majority suggests, render parole rescission determinations practically unreviewable by the courts. Factfinders can obtain more information by seeing and hearing a statement than they can glean from reading cold words on a page. Indeed, this Court routinely affords deference to factfinders in all types of matters precisely because those judges or juries have the unique opportunity to hear live testimony and observe witness demeanor (see e.g. Matter of Patricia P. v Dana Q., 106 AD3d 1386, 1387 [2013]; People v Knowles, 79 AD3d 16, 22-23 [2010], lv denied 16 NY3d 896 [2011]; People v Lawal, 73 AD3d 1287, 1289 [2010]; Sharpe v Raffer, 69 AD3d 1137, 1138 [2010], lv dismissed 15 NY3d 800 [2010]). Our position in this case merely applies this well-established precept to a factual scenario not previously addressed by our case law. Further, inasmuch as the Executive Law requires that respondent consider both current and prior victim statements (see Executive Law § 259-i [2] [c] [A] [v]), today's decision precludes respondent from considering the prior victim impact statements that best illustrate the lasting consequences of petitioner's crime. We vehemently disagree that this "profoundly compelling and even heart-wrenching" (maj op at *3) evidence of the fear and anguish suffered by the victim's family should be disregarded because of an apparent filing error.
In sum, although some of the information contained in the DVDs was known to respondent through prior submissions (see Matter of Duffy v New York State Dept. of Corr. & Community Supervision, 132 AD3d 1207, 1207-1210 [2015]), the record supports the conclusion that respondent did not previously know or understand the full impact of petitioner's crime on the victim's family (see Matter of Spataro v New York State Dept. of Corr. & Community Supervision, 137 AD3d at 1563). Accordingly, we discern no basis upon which to disturb respondent's decision that the DVDs constituted "significant information" that was not previously known to it and its further conclusion that the information contained therein constitutes substantial evidence to support its determination rescinding petitioner's open release [*6]date (9 NYCRR 8002.5 [b] [2] [i]; see Matter of Thorn v New York State Bd. of Parole, 156 AD3d at 982; Matter of Spataro v New York State Dept. of Corr. & Community Supervision, 137 AD3d at 1563; cf. Matter of Costello v New York State Bd. of Parole, 23 NY3d at 1004). We would, therefore, confirm the determination and dismiss the petition.
Mulvey, J., concurs.
ADJUDGED that the determination is annulled, without costs, and petition granted.



Footnotes

Footnote 1:The record on review contains the transcripts of various prior parole interviews and determinations dating back to 2001, none of which reflects that respondent received and reviewed the materials contained in the DVDs.