People v Kirkley (2019 NY Slip Op 03703)





People v Kirkley


2019 NY Slip Op 03703


Decided on May 9, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 9, 2019

109329

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
KEION KIRKLEY, Appellant.

Calendar Date: March 22, 2019

Before: Garry, P.J., Mulvey, Aarons, Rumsey and Pritzker, JJ.


John Ferrara, Monticello, for appellant.
P. David Soares, District Attorney, Albany (Christopher D. Horn of counsel), for respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered February 1, 2017, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree.
Police officers conducted a controlled buy in which a confidential informant (hereinafter CI) purchased cocaine from a seller outside defendant's residence, a first-floor apartment that defendant shared with a housemate. Thereafter, police obtained a warrant to search the apartment, asserting, among other things, that the seller — who was not defendant — met the CI outside defendant's residence, entered the apartment to obtain the cocaine and returned outside to supply it to the CI. In the ensuing search, police found crack cocaine, a firearm and items associated with the sale of drugs. Defendant was charged with criminal possession of a weapon in the third degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the fourth degree. Following a jury trial, he was acquitted of criminal possession of a weapon in the third degree and convicted of the remaining charges. Defendant absconded during jury deliberations and was returned by the United States Marshals Service before sentencing. He was sentenced to two concurrent prison terms of five years, followed by two years of postrelease supervision. Defendant appeals.
Before the trial, the People moved for a protective order that would preserve the CI's confidentiality by permitting defense counsel to view a video recording of the controlled buy while precluding counsel from informing defendant of the CI's identity (see CPL 240.50 [1]). County Court granted the request and directed the People to permit defense counsel to view the video before a scheduled suppression hearing. Defendant now argues that this order violated his constitutional right to confront witnesses, asserting that he should have been allowed to view the video so that he could identify the seller who participated in the controlled buy. That argument, however, was raised for the first time upon this appeal. At the suppression hearing, defense [*2]counsel acknowledged that he had viewed the video and did not argue that defendant should be permitted to view it. Accordingly, this claim is unpreserved for review (see CPL 470.05 [2]; People v Davis, 144 AD3d 1188, 1190 [2016], lvs denied 28 NY3d 1144, 1150 [2017]).
Defendant's related claim that County Court erred in failing to hold a Darden hearing is without merit. Such a hearing is required "'where there is insufficient evidence to establish probable cause apart from the testimony of the arresting officer as to communications received from [a CI and] when the issue of identity of the [CI] is raised at the suppression hearing'" (People v Farrow, 98 NY2d 629, 631 [2002], quoting People v Darden, 34 NY2d 177, 181 [1974]; see People v Anderson, 104 AD3d 968, 971 [2013], lvs denied 21 NY3d 1013, 1016 [2013]). Here, defendant's omnibus motion included a request for a Darden hearing, which the court initially granted. However, after learning that defense counsel had seen the video of the controlled transaction, the court reversed its prior decision and declined to hold the hearing. Notably, defendant's arguments in favor of a Darden hearing did not include any challenge to the CI's existence [FN1]. Defendant now argues that a Darden hearing was required to confirm the existence of a different CI and a confidential source who also provided information that was included in the search warrant application. However, this assertion was raised for the first time upon this appeal and is therefore unpreserved for review (see People v Edwards, 95 NY2d 486, 493 [2000]; People v Jenkins, 38 AD3d 230, 231 [2007], lv denied 8 NY3d 986 [2007]). Even if the claim had been properly before us, we would not have found that it had merit, as the recording of the controlled buy provided probable cause for the search warrant without regard to the other information in the application (see People v Crooks, 27 NY3d 609, 615 [2016]).[FN2]
County Court did not deprive defendant of his right to be represented by the counsel of his choice by denying his request to adjourn the suppression hearing to allow him time to retain private counsel. Defendant was represented by the Public Defender's office until July 2016, when his counsel moved to be relieved because recent discussions with the prosecutor had revealed that one of the CIs was also represented by the Public Defender's office. The court immediately appointed substitute counsel, who was present at that time and received a full copy of defendant's file. Just under three weeks later, at an appearance two days before the scheduled suppression hearing, substitute counsel told the court that defendant was requesting an adjournment of the suppression hearing to give him time to hire private counsel. The court denied the request, advising defendant that he was free to hire private counsel if he so chose, but that the hearing would take place as scheduled.
"Criminal defendants have a constitutional right to be represented by counsel of their own choosing and 'must be accorded a reasonable opportunity to select and retain' such counsel" (People v Sapienza, 75 AD3d 768, 770 [2010], quoting People v Arroyave, 49 NY2d 264, 270 [1980]). Nevertheless, "a request to change counsel previously retained or assigned must be addressed to the trial court's discretion to insure that the defendant's purported exercise of the right does not serve to delay or obstruct the criminal proceedings" (People v Orminski, 108 AD3d 864, 865 [2013] [internal quotation marks, brackets and citation omitted], lv denied 22 NY3d 958 [2013]; accord People v Miller, 166 AD3d 1385, 1387 [2018], lv denied 32 NY3d 1207 [2019]). We reject defendant's contention that the People may have delayed unduly in informing the Public Defender's office of the conflict, as it is based solely on speculation. Defendant was at liberty throughout the three-week period between the change in his representation and the suppression hearing, and has offered no reason why he could not retain private counsel during that time. Notably, after the denial of his request, defendant never [*3]reiterated his desire to obtain different representation, and he continued to be represented by substitute counsel thereafter. Thus, County Court did not abuse its discretion in refusing to adjourn the hearing (see People v Miller, 166 AD3d at 1387; People v Singleton, 163 AD3d 1272, 1273 [2018]; People v Orminski, 108 AD3d at 866).
We find no merit in defendant's claim that County Court improperly denied his Batson challenges with respect to two prospective jurors. The three-step procedure that a trial court must follow in response to a Batson challenge is well established. "At step one, the moving party bears the burden of establishing a prima facie case of discrimination in the exercise of peremptory challenges. Once a prima facie case of discrimination has been established, the burden shifts, at step two, to the nonmoving party to offer a facially neutral explanation for each suspect challenge. At the third step, the burden shifts back to the moving party to prove purposeful discrimination and the trial court must determine whether the proffered reasons are pretextual" (People v Hecker, 15 NY3d 625, 634-635 [2010] [internal quotation marks and citations omitted]; accord People v Jones, 136 AD3d 1153, 1157-1158 [2016], lv dismissed 27 NY3d 1000 [2016]; see People v Green, 141 AD3d 1036, 1038-1039 [2016], lv denied 28 NY3d 1072 [2016]). Here, defendant based his Batson claim on the People's use of peremptory challenges to remove juror No. 17 and juror No. 19, arguing that they were the only African-American prospective jurors on the panel [FN3]. In response, County Court directed the People to offer race-neutral reasons for the challenge, thus reaching step two of the Batson process. On appeal, defendant asserts that the court erred at the third step of the Batson procedure and should have found that both challenges were based on purposeful discrimination.
Turning first to juror No. 17, County Court had previously denied the People's challenge for cause, in which the People questioned the prospective juror's impartiality based upon her testimony that she was close to an incarcerated relative and her hesitance in answering questions. The court denied the challenge for cause as the prospective juror had stated that she could be impartial. Following defendant's Batson challenge, the People reiterated these concerns and further noted that the juror had "struggled to answer questions generally," had hesitated before stating that she could be impartial and had described herself as "shocked" by the handling of her relative's case. The People also distinguished juror No. 17 from another prospective juror who also had an incarcerated relative, but who was not close to the relative and had strongly confirmed that she could be impartial. These explanations met the requirement of facial neutrality, as they were "'based on something other than the race of the juror'" (People v Hecker, 15 NY3d at 655, quoting Hernandez v New York, 500 US 352, 360 [1991]). It thus became defendant's burden to persuade the court that the stated reasons were pretextual and to make a record that would support that conclusion (see People v Smocum, 99 NY2d 418, 422 [2003]; People v Acevedo, 141 AD3d 843, 846 [2016]).
Defense counsel argued that juror No. 17 was honest and forthcoming and that her hesitance resulted from nervousness rather than from partiality. When County Court pressed counsel to state a specific basis for his claim of purposeful discrimination, counsel argued that discrimination was shown by the nature of the case, the makeup of the jury and the fact that the People had exercised only five peremptory challenges, two of them against African-American prospective jurors.[FN4]
The trial court's responsibility in the third step of the Batson process is "to make an ultimate determination on the issue of discriminatory intent based on all of the facts and [*4]circumstances presented" (People v Smocum, 99 NY2d at 422; see People v Molineaux, 156 AD3d 1250, 1252 [2017], lv denied 31 NY3d 1085 [2018]). Here, County Court noted juror No. 17's close relationship to her incarcerated relative and found that "it was fundamentally clear . . . that she was struggling with being a juror in this case." The court was entitled to take into account "its own observations of the jurors and counsel" (People v Knowles, 79 AD3d 16, 23 [2010], lv denied 16 NY3d 896 [2011]). According the requisite "great deference" to the court's resolution of this factual issue, we find no basis to disturb its determination (People v Hecker, 15 NY3d at 656; see People v Green, 141 AD3d at 1040).
Turning to juror No. 19, we find no error in County Court's determination. As race-neutral reasons for this peremptory challenge, the People stated that they intended to strike any prospective juror who was "overly sympathetic" or who had "an involved history with drug users," and noted that juror No. 19 had worked with large numbers of drug addicts in her role as a human services counselor. We agree with County Court that the People thus satisfied their burden to offer a race-neutral explanation (see People v Knowles, 79 AD3d at 20). Defense counsel's only response was, in effect, a concession; he stated that he "underst[ood] the People's position" and made no argument that the stated reason was pretextual. Thus, "he did not meet his ultimate burden of showing that the reasons given were merely a pretext for intentional discrimination" (People v Skervin, 13 AD3d 661, 662 [2004], lv denied 5 NY3d 833 [2005]; see People v Knowles, 79 AD3d at 21).
Finally, County Court properly proceeded with jury deliberations after defendant failed to appear in court. A criminal defendant has a constitutional and statutory right to be present at his or her trial (see US Const 6th Amend; NY Const, art I, § 6; CPL 260.20; People v Parker, 57 NY2d 136, 139 [1982]). However, that right may be forfeited and a defendant may be tried in absentia when he or she voluntarily fails to appear after attending part of the trial (see Taylor v United States, 414 US 17, 20 [1973]; People v Sanchez, 65 NY2d 436, 443-445 [1985]). Such a forfeiture occurs by operation of law and is distinct from a waiver, "which involves an evaluation of [the] defendant's state of mind" (People v Sanchez, 65 NY2d at 443 n; see People v McKinnies, 144 AD2d 178, 179 [1988], lv denied 73 NY2d 858 [1988]). Thus, defendant's arguments based upon his understanding of the Parker warnings given at arraignment and the court's alleged failure to repeat the warnings during the trial are not pertinent.
Before a defendant who has forfeited the right to be present may be tried in absentia, the trial court must conduct an appropriate inquiry into the surrounding facts and circumstances and, if it determines that the defendant's absence is deliberate, "recite[] on the record the facts and reasons it relied upon" (People v Brooks, 75 NY2d 898, 899 [1990]; see People v June, 116 AD3d 1094, 1095 [2014]). Defendant was present for jury instructions on the morning of his disappearance and returned after deliberations began, when County Court received a jury note. However, he failed to appear later that day, when the court received additional jury notes. Upon the court's inquiry, defense counsel stated that he had made several unsuccessful attempts to reach defendant by telephone, that his office staff had also done so, and that a relative of defendant's who was present at the courthouse had also repeatedly tried to call him. None of these calls had been answered. Counsel stated that, based upon his conversation with the relative, it was his understanding that defendant did not intend to return. In response to further questioning from the court, counsel confirmed that a group of defendant's supporters had departed in a vehicle, but stated that he did not know whether defendant was with them.
County Court found that defendant was aware that the trial was in progress and that he should be present, and that he had communicated through his family members that he did not intend to return. The court further found that there was no indication that defendant was incapacitated or that there was some other legitimate reason for his absence. After instructing the jury that it was to draw no inference from defendant's absence, the court continued the trial. Contrary to defendant's claims, we find that the court's inquiry was sufficient under the circumstances presented, that it reasonably determined that defendant's absence was deliberate and that it did not err in continuing the trial in his absence (see People v Redzeposki, 7 NY3d [*5]725, 726 [2006]; People v Gooley, 156 AD3d 1231, 1233-1234 [2017], lvs denied 31 NY3d 984, 985 [2018]; People v Reed, 148 AD2d 809, 810 [1989]).
Mulvey, Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant argued that an in camera appearance by the CI was required because the video did not conclusively establish that drugs changed hands. Defendant's appellate brief includes no arguments related to this claim, and we deem any such issues to be abandoned (see generally People v Williams, 24 AD3d 879, 880 [2005], lv denied 6 NY3d 820 [2006]).

Footnote 2:
Defendant's additional claim that police violated CPL 690.50 (5) by failing to file the search warrant inventory until 10 months after the search is unpreserved for our review (see CPL 470.05 [2]).

Footnote 3: The voir dire transcript does not distinguish among the various prospective jurors, identifying all of their responses interchangeably with the designation "PROSPECTIVE JUROR." We note that this practice complicates appellate review, as it compels this Court to rely upon context and the parties' arguments to identify the pertinent portions of the transcript, and thus may result in confusion.

Footnote 4: Defendant now also argues that discriminatory intent was shown by the People's failure to challenge the other prospective juror with an incarcerated relative, but this contention is unpreserved for our review (see generally People v James, 99 NY2d 264, 271-272 [2002]).